UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| ELIZABETH ANNETTE GARCIA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-363-CG |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Elizabeth Annette Garcia brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of a United States Magistrate Judge. Doc. Nos. 25, 26. Upon review of the administrative record[1] and the arguments and authorities submitted by the parties, the Court reverses and remands the Commissioner's decision.

PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on December 26, 2009, alleging a disability onset date of August 17, 2009. R. 123-28, 153-55. Following denial of her

---

[1] Citations to the administrative record, Doc. No. 9, are as "R. __," using the pagination assigned by the Social Security Administration ("SSA") in the certified copy of the transcript of the administrative record. Citations to other documents filed in this Court use the pagination assigned by the Court's electronic filing system.

applications initially and on reconsideration, Plaintiff was granted and attended a hearing before an Administrative Law Judge ("ALJ"). R. 26-57, 58-66, 70-72. The ALJ issued an unfavorable decision on May 14, 2012. R. 10-25. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-5; *see also* 20 C.F.R. § 404.981. This action for judicial review followed.

ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2009, the alleged onset date. R. 12; *see* 20 C.F.R. § 404.1571. At step two, the ALJ determined that Plaintiff had the severe impairments of "problems with back, neck, and both hands, fibromyalgia, rheumatoid arthritis, and obesity." R. 12; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 19-23; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform "sedentary work," subject to additional specifications and limitations:

> The claimant can lift and/or carry and push/pull less than 10 pounds occasionally and lift and/or carry and push/pull 10 pounds frequently.[2] She can sit for 6 hours in an 8-hour workday and stand 2 hours in an 8-hour workday. She could never climb ladders, ropes or scaffolds. She could frequently balance, kneel and crouch. The individual could occasionally climb stairs and ramps, crawl and stoop. She would be able to frequently reach, handle, finger and feel with left and right upper extremities.

R. 19-20; *see* 20 C.F.R. § 404.1567(a) (defining "sedentary work"). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not material to the determination of disability. R. 23-24; *see* 20 C.F.R. §§ 404.1565, .1568.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Taking into consideration the testimony of a vocational expert regarding the degree of erosion to Plaintiff's unskilled sedentary occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as check cashier (DOT 211-462.026), timekeeper (DOT 215-362.022), and sorter (DOT 209-687.022), all of which offer jobs that exist in significant numbers in the national economy. R. 24-25; *see* 20 C.F.R. § 404.1545(a)(5)(ii). On that basis, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 17, 2009, though the date of the decision. R. 25; *see* 20 C.F.R. § 404.1520(g).

---

[2] From the language used, it appears that the ALJ intended to state a different weight for *occasional* as opposed to *frequent* lifting, carrying, pushing, and pulling. R. 19-20. However, the missing detail is not discernible from the remainder of the ALJ's decision. *See* R. 10-25.

3

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the ALJ's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff alleges one claim of error: that because the ALJ "supported her [credibility] determination with misstatements of the record, personal assumptions, and by failing to discuss factors that supported [Plaintiff's] statements," the ALJ's credibility determination was improper. Pl.'s Br., Doc. No. 18, at 9-15. Without foreclosing the possibility that a proper credibility assessment could lead to the same result, the Court

determines that the multiple inaccuracies in the credibility assessment actually performed by the ALJ require reversal and remand.

The assessment of a claimant's RFC generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of. . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See* SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996); *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). The ALJ is required to closely and affirmatively link her credibility findings to substantial evidence in the record and to include "specific reasons" for such findings. *See Wilson*, 602 F.3d at 1144; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); SSR 96-7p, 1996 WL 473186, at *4. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (internal quotation marks omitted). In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility, including:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *accord* 20 C.F.R. § 404.1529(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).

Here, the ALJ concluded that Plaintiff was "not fully credible," stating that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 21, 22. As support for this conclusion, the ALJ pointed to two primary findings. First, the ALJ stated that, "[Plaintiff] alleged difficulties walking with repeated falls; however there are no emergency room visits or medical records for treatment of falls [and Plaintiff] has not been prescribed an assistive device to help prevent alleged falls." R. 21-22. Second, the ALJ stated that, "Medical records indicated an improvement following carpal tunnel surgeries; however, [Plaintiff] alleges that she is unable to lift and/or carry anything due to hand difficulties. [Plaintiff] testified that she was able to go to the grocery store, requiring her to lift and carry groceries from her car into her home." R. 22. As Plaintiff asserts, however, neither of these findings is supported by substantial evidence.

First, the ALJ cited an absence of emergency room visits or medical records for treatments of falls as evidence discrediting Plaintiff's claim that she has difficulty walking. *See* R. 21. The record, however, reflects several instances of treatment for falls and numerous instances of reports of falls. The ALJ herself noted that "[o]n September 8, 2010, [Plaintiff] presented for pain relief following a fall." R. 16 (citing Ex. 22F); *see* R. 722. Further, Plaintiff, some time prior to May 27, 2008, sought treatment for a fall that had resulted in a broken foot. *See* R. 241-43; *cf.* R. 417 (Feb. 3, 2010, notation that Scott Shields, DPM, last saw Plaintiff July 11, 2008). Plaintiff additionally, on or around August 16, 2009, sought treatment for a fall that had resulted in a compression fracture of the spine. *See* R. 361, 364, 373, 395, 400-02, 433, 435, 513, 514, 611, 614, 767, 773, 775; *see also* R. 14 ("New lumbar spine x-ray on August 19, 2009 noted a new compression fracture at [T12] with roughly 10 to 15% loss of vertebral body height. . . . Bruce Pendleton, M.D. examined the claimant on August 27, 2009 for complaints of neck and low back pain. She also reported pain in her right leg following a fall four days prior."). Further, though Plaintiff may not have presented for treatment, the medical record indicates that Plaintiff reported having fallen during the year prior to July 7, 2009, and also on January 25, 2010 (*see* R. 414, 450), and other non-medical sources reported falls during the relevant time period (*see* R. 45, 151, 152, 157, 220, 223, 224).[3]

---

[3] The ALJ also cites the lack of a prescription for an assistive device as undermining Plaintiff's testimony regarding difficulty in walking. R. 21-22. Plaintiff does not dispute the fact that she was not prescribed a cane or other assistive device. Pl.'s Br. at 11-14. This alone, however, would not discredit the evidence of falls discussed above.

7

Second, the ALJ states that "[Plaintiff] alleges that she is unable to lift and/or carry anything due to hand difficulties," indicating that this conflicted with Plaintiff's testimony "that she was able to go to the grocery store, requiring her to lift and carry groceries from her car into her home." R. 22. But, again, the record does not support the ALJ's finding. During the administrative hearing, the ALJ asked Plaintiff about driving:

> Q And how often do you operate a vehicle?
>
> A Maybe like once or twice a week.
>
> Q Where do you go?
>
> A If we have doctor appointment, I go there if I can't get one of my kids to drive me.
>
> Q Uh-huh. Where else do you go?
>
> A Maybe sometimes to the grocery store. It just – that's about it.

R. 36. Later in the hearing, the ALJ specifically questioned Plaintiff about grocery shopping:

> Q And do you do any shopping for the house – go out and get some groceries and things that are needed around the house?
>
> A No, usually I have my kids do it.

R. 48.

This testimony does not indicate that Plaintiff regularly, or even necessarily ever, lifted and carried any significant weight of groceries, such as would be inconsistent with Plaintiff's specific testimony regarding pain and restriction in the use of her hands. Moreover, other statements by Plaintiff in the record affirmatively contradict the ALJ's assumption. In her Function Report, Plaintiff reported she needed help buying food—a

fact the ALJ seemed to acknowledge by her statement that "[Plaintiff] reported she was unable to . . . purchase household supplies." *See* R. 21, 184. Plaintiff also reported that she only shopped by phone, mail, or computer, specifying "I don't go shopping." R. 185. The state agency medical consultant also noted, presumably based on a report by Plaintiff, that Plaintiff "does not shop." R. 680.

Following her conclusion as to credibility, the ALJ made two additional statements that could be read as relevant to that assessment. First, the ALJ stated, "[Plaintiff] alleged that she could not work due to her disability; however, her activities of daily living showed she was capable of performing all of her activities within normal limitations indicating that she was not precluded from performing all work." R. 22. Next, the ALJ stated, "[Plaintiff] responded positively to her medications with no side-effects. Therefore, her medications did not preclude her from work." R. 22.

The first of these statements would not support an adverse credibility assessment because, contrary to the ALJ's suggestion, work-related functional limitations are indicated within the evidence of Plaintiff's activities of daily living. For instance, relevant to Plaintiff's ability to lift and carry, the ALJ herself notes the following:

- The claimant testified at the hearing she was unable to clean her home, wash dishes or cook meals.
- She testified that she naps during the day.
- She attempts to [crochet] but experiences problems with her hands.
- She testified that she is unable to write with her hand difficulties.
- The claimant reported she was unable to vacuum, lift a basket of clothes, change a light bulb, weed a flowerbed or purchase household supplies.

9

R. 20-21; *see also* R. 42, 47, 48, 184. The ALJ does not indicate which, if any, of Plaintiff's activities of daily living would undermine these statements or Plaintiff's other descriptions of pain and symptomology.

Regarding medications, an ALJ may consider, in assessing a claimant's credibility, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *3. Here, the ALJ appears to state that medications had lessened Plaintiff's pain and symptoms without side effects. R. 22. However, the ALJ's conclusory sentence does not indicate any examples of different levels of pain and symptomology based on differing levels of medication or treatment, and the available evidence suggests that the instances of pain and other symptoms described by Plaintiff occurred while she was being medicated. Without explanation, this conclusion would not support the ALJ's credibility assessment.[4]

In sum, the ALJ's credibility assessment is based on unsupported and erroneous factual findings. The ALJ's finding of no falls when there are records of multiple falls

---

[4] Although not necessarily material to assessing Plaintiff's credibility, the statement that Plaintiff's medications caused "no side-effects," *see* R. 22, is also inaccurate. The ALJ herself noted that Plaintiff, "testified that she experienced side effects of her medications including weight gain and fatigue." *See* R. 21. Plaintiff's testimony reflects those side effects, as well as others. *See* R. 47 (Plaintiff testifying, in response to a question about whether her medications caused side effects, "Yes, weight gains. They make me sleepy, make me constipated, make me have to go to the restroom. I fall asleep on -- I can just be sitting and fall asleep."); 49 (Plaintiff testifying, in response to a question about what caused an 84-pound weight gain, "The medication and I have to receive steroid shots and stuff, in my back and hips and –"; along with further testimony that the extra weight gain "limits" her and "makes it hard to move around."); *see also* R. 166-67 (listing Plaintiff's medications and the side effects she experiences).

mischaracterizes the evidence. *See Sitsler v. Astrue*, 410 F. App'x 112, 117–18 (10th Cir. 2011) (noting that the ALJ mischaracterized plaintiff's testimony and stating: "We have criticized this form of selective and misleading evidentiary review, holding [in *Sisco v. Dep't of Health & Human Servs.*, 10 F.3d 739, 743 (10th Cir. 1993)] that an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations."). Similarly, the ALJ's finding that Plaintiff had lifted and carried a significant weight of groceries was based on an assumption unsupported by evidence of record. *See Winfrey v. Chater,* 92 F.3d 1017, 1020-21 (10th Cir. 1996) (holding that finding based on speculation was not supported by substantial evidence). Because neither these nor the other two possibly-cited bases for the ALJ's credibility assessment constitute substantial evidence in support of the ALJ's determination, that determination cannot stand. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (refusing to "defer[] to the ALJ as trier of fact on credibility" when little was "left as 'substantial evidence' for the ALJ's determination of noncredibility"); *Talbot v. Heckler,* 814 F.2d 1456, 1464 (10th Cir. 1987) (finding that ALJ had mischaracterized claimant's reports of activities, leaving only "a mere scintilla" of support that was insufficient to constitute substantial evidence).

Moreover, the ALJ's credibility assessment lacks consideration of the frequent instances in which Plaintiff sought pain relief through medication and other treatment. Plaintiff's medical records include repeated references to Plaintiff's pain, numbness, and weakness. *See* Exs. 1F, 2F, 3F, 4F, 8F, 9F, 10F, 13F, 15F, 16F, 17F, 18F, 22F, 23F, 24F, 25F, 27F, 28F, 29F, 31F, 32F, 33F, 35F, 37F, 38F *passim*; *but see* Ex. 30F (indicating

improvement after carpal tunnel surgery).[5] This is probative evidence that the ALJ was required to consider. *See* SSR 96-7p, 1996 WL 374186, at *3, *7 (July 2, 1996) ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."); *Sitsler*, 410 F. App'x at 117 (finding evidence of claimant's pain medication prescriptions was "evidence the ALJ should have expressly considered and weighed in determining whether [plaintiff's] complaints of disabling pain were credible"); *Hardman v. Barnhart*, 362 F.3d 676, 680 (10th Cir. 2004) (assessing credibility of claimant's complaints of disabling pain and holding that "[i]t was error for the ALJ to fail to expressly consider claimant's persistent attempts to find relief from his pain, his willingness to try various treatments for his pain, and his frequent contact with physicians concerning his pain-related complaints"); *Winfrey*, 92 F.3d at 1021 (holding ALJ erred by failing to consider factors relevant to pain allegations that were supported by the record); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (holding ALJ must

---

[5] In addition to her "use of steroids and narcotic medications," Plaintiff cites the following examples of "treatment methods to alleviate her pain":

> For her problems with fibromyalgia, [Plaintiff] underwent infusion treatments for 2009 through 2012 ([R.] 449–52, 747–54, 797–801, 939–65). [Plaintiff] received injections and nerve ablations in the cervical, thoracic, and lumbar regions of her spine from 2010 through 2012 ([R.] 710, 712, 721, 727, 769, 818–19, 867, 984, 991, 994).

Pl.'s Br. at 14.

"discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"); *see also Hamlin*, 365 F.3d at 1221-22 (noting that plaintiff's medical records were "replete with his reports of pain and of prescriptions and refills for medication" and concluding that other evidence cited by the ALJ was "insufficient to undermine his pain allegations").

Defendant argues that the ALJ "reasonably relied on the medical source opinions, the majority of which were inconsistent with Plaintiff's claims of total disability." Def.'s Br. at 10 (citing R. 22-23). It is true that "the consistency or compatibility of nonmedical testimony with objective medical evidence" is an important and legitimate factor to be considered when determining the credibility of subjective complaints of pain and symptoms. *See Wilson*, 602 F.3d at 1144. But based on the volume of errors and contradictions at issue, the Court cannot confidently say that the ALJ's mistakes are harmless and that the ALJ's reliance on the medical record alone would qualify as substantial evidence for the adverse credibility determination. *See Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004) (discussing harmless error in social security appeals and holding that such a principle applies only where the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"); *Bakalarski v. Apfel*, 1997 WL 748653 at *3 (10th Cir. Dec. 3, 1997) ("Because a credibility assessment requires consideration of all the factors 'in combination,' when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the

credibility determination.") (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 n.7 (10th Cir. 1988)).[6]

Accordingly, the Commissioner's decision is reversed and remanded. *See Winfrey,* 92 F.3d at 1021 (reversing in part because "the ALJ's evaluation of plaintiff's subjective complaints was flawed by his reliance on factors that were not supported by the record and by his failure to consider other factors that were supported by the record"); *Sitsler,* 410 F. App'x at 118 (reversing because, "[a]lthough we will not upset an ALJ's credibility determination that is closely and affirmatively linked to substantial evidence, here the ALJ's analysis was flawed both by his reliance on mischaracterizations of the evidence and by his failure to consider the uncontroverted evidence of claimant's prescription pain medications"); *Phillips v. Colvin*, No. CIV-13-61-D, 2014 WL 1689686, at *4 (W.D. Okla. Apr. 29, 2014) (reversing because ALJ's credibility determination was based on mischaracterizations of the record and erroneous factual findings).

## CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is REVERSED and REMANDED. Judgment will issue accordingly.

---

[6] Defendant also argues that the ALJ could have reasonably relied upon inconsistent statements by Plaintiff as support for the ALJ's credibility assessment. *See* Def.'s Br., Doc. No. 22, at 8-9. The ALJ, however, cited only the reasons referenced in the discussion above. *See* R. 21-22. The Court may not independently assess Plaintiff's credibility based on evidence not expressly considered by the ALJ. *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

IT IS SO ORDERED this 30th day of September, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE